**Opinion issued August 21, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———

## NO. 01-13-00118-CV

———

**CAROLYN CALKINS JAMES, G. WESLEY URQUHART, G. WESLEY URQUHART, P.C., AND MARY ELIZABETH URQUHART, Appellants**

**v.**

**RICHARD STEPHEN CALKINS, AS AGENT- IN-FACT FOR MARY OLIVE CALKINS, AND MICHAEL EASTON, Appellees**

———

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-21236**

———

## O P I N I O N

Appellant Carolyn Calkins James and her brother, appellee Richard Stephen

Calkins, have, for years, been embroiled in litigation in multiple courts regarding

the estate and guardianship of their mother, Mary Olive Calkins.[1] In the underlying suit, Richard, as agent-in-fact of Mary, and appellee Michael Easton, pro se,[2] sued Carolyn and her lawyers, claiming that they were fraudulently representing that Carolyn was the next friend of Mary and had fraudulently filed a lis pendens clouding title to Mary's home. The appellants filed a motion to dismiss pursuant to the Texas Citizen's Participation Act (TCPA), asserting that the lawsuit was related to their exercise of free speech, their freedom to petition, and their freedom of association. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West Supp. 2013). The motion was overruled by operation of law.[3] *See id.*

---

[1] *See James v. Underwood*, No. 01-13-00277-CV, 2014 WL 1848738, at *1 (Tex. App.—Houston [1st Dist.] May 8, 2014, no pet. h) ("Carolyn James and her brother Richard Steven Calkins are in a legal dispute over who has the right to manage the assets of their mother, Mary Calkins. Their controversy has spawned multiple lawsuits filed in various district and probate courts in at least two counties resulting in no less than 11 issued appellate decisions—thus far—from the First and Fourteenth Courts of Appeals.").

[2] Easton is unrelated to Carolyn, Richard, or Mary, but purports to be the assignee of Richard's individual claims. Easton also has intervened in other disputes between the siblings and others on this basis. *See, e.g.*, *James*, 2014 WL 1848738, at *1 & n.2 ("Michael Easton, an individual who is not related to James or Calkins, has repeatedly intervened, sued and been sued in the dispute between the siblings."); *Whatley v. Walker*, 302 S.W.3d 314 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (Easton intervened pro se in guardianship proceeding, claiming to be assignee of certain claims from ward's wife).

[3] Because the motion was overruled by operation of law in January 2013, we apply the then-effective version of the TCPA, which is the original version of the statute enacted in 2011. *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 4, 2011 Tex. Gen. Laws 961, 964 (original enactment of TCPA effective June 17, 2011);

§ 27.008(a). We reverse and remand for further proceedings consistent with this opinion.

## Background

### *The guardianship proceeding*

In March 2008, Carolyn filed an application for guardianship of Mary in Harris County probate court. She contended that Mary was incapacitated and that Richard was abusing the power of attorney that Mary had executed in his favor in May 2007. That suit remains pending.

### *The 61st District Court declaratory judgment action*

In December 2008, while the guardianship action was pending, Carolyn, individually and as next friend of Mary, sued Richard in the 61st District Court of Harris County. She sought a declaratory judgment that Richard obtained Mary's 2007 power of attorney by fraud and breached his fiduciary duties in the handling of Mary's property; that Mary's execution of a 2007 deed conveying her home to a trust created and controlled by Richard is invalid; and that Richard is not the agent-in-fact of Mary. Richard, as the agent-in-fact of Mary, and Easton, as assignee of Richard's individual claims, counterclaimed to enforce the power of attorney.

---

Act of June 14, 2013, 83d Leg., R.S., ch. 1042, § 6, 2013 Tex. Sess. Law Serv. 2499, 2500 (West) (revisions to TCPA effective June 14, 2013).

In September 2010, Carolyn executed a notice of lis pendens stating that the 61st District Court case "involve[d] the establishment of an interest in . . . and/or the right to possession of" Mary's home and filed it with the Harris County clerk. That suit remains pending.

### The underlying lawsuit

This appeal arises from a third lawsuit, which began in April 2011 and was filed in the 125th District Court. Easton and Richard, individually and as agent-in-fact for Mary, sued Judge Steve M. King of Probate Court #1 in Tarrant County, Probate Court #1 Court Administrator Mark W. Sullivan, Carolyn, and two of her lawyers, G. Wesley Urquhart and Kenneth Zimmern, alleging that Carolyn and her lawyers had conspired to engage in ex parte communications about Mary's guardianship proceeding with "nearly every single probate judge in this state."

In August 2011, Richard and Easton filed a second amended petition, wherein they dropped Judge King and Sullivan as defendants, and added as a defendant Mary Elizabeth Urquhart, who had notarized the 2010 lis pendens. The petition omitted the original allegations about an alleged conspiracy to communicate ex parte. Instead, the gravamen of this new petition was that Carolyn and her lawyers had fraudulently appeared in various courts on behalf of Mary, despite knowing that they had no authority to represent Mary, and had fraudulently

4

filed the lis pendens that gave notice of the 61st District Court suit in order to secure payment of Carolyn's legal fees, knowing that the filing was fraudulent and that Carolyn had no interest in Mary's home. The purpose of the suit was to cancel the lis pendens and stop appellants from suing on Mary's behalf. In their fourth amended petition, Richard sued only as agent-in-fact for Mary, and Easton sued individually and as assignee of Richard's individual claims. They also added G. Wesley Urquhart, P.C. as an additional defendant. Richard and Easton later amended the petition to include claims for actual and constructive fraud, barratry, and fraudulent lien.

On November 21, 2012, Carolyn, G. Wesley, and Mary Elizabeth filed a motion for leave to file a motion to dismiss under the TCPA, and filed a motion to dismiss under the TCPA along with G. Wesley Urquhart, P.C. The motion asserted that all of Richard and Easton's claims were based on the movants' actions in or related to various lawsuits, and therefore were an attempt to restrict the movants' freedom of speech, right to petition, and right of association. In response, Richard and Easton argued that the TCPA did not apply because their causes of action were all recognized causes of action in Texas.

On December 17, 2012, the trial court held a hearing, granted the motion for leave, and took the motion to dismiss under advisement. The trial court did not

rule on the motion within 30 days of the hearing, and it was therefore overruled by operation of law. The movants timely appealed.

## Appellate Jurisdiction

Before turning to the merits, we address (1) appellees' argument that we lack jurisdiction over this appeal because G. Wesley Urquhart, P.C. was not served, and instead voluntarily appeared, (2) appellees' motion to dismiss the appeals of Mary Elizabeth, G. Wesley, and his law firm because these appellants have been dismissed without prejudice from the underlying lawsuit, and (3) appellees' argument regarding whether the TCPA applies to this case.

**A. Are we deprived of jurisdiction over this appeal because one appellant waived service, and others sought leave to file a motion to dismiss after the statutory deadline?**

Appellees argue that we lack jurisdiction over this appeal because G. Wesley Urquhart, P.C. was not formally served, and instead voluntarily appeared. The TCPA provides that "[a] motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). Appellees argue, based on this language, that the TCPA does not permit a voluntarily-appearing defendant to move for dismissal, and that the other appellants' motion for leave to file their

motion to dismiss should have been denied because G. Wesley Urquhart, P.C. was never served.

### 1. Standard of Review and Applicable Law

We review questions of jurisdiction and of statutory construction de novo. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In interpreting statutes, our primary purpose is to give effect to the Legislature's intent by relying on the plain meaning of the text adopted by the Legislature, unless a different meaning is supplied by statutory definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n*, 325 S.W.3d at 635.

### 2. Analysis

The TCPA provides that "[a] motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action. The court may extend the time to file a motion under this section on a showing of good cause." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). The parties agree that G. Wesley Urquhart, P.C. was never served, and instead voluntarily appeared on November 21, 2012, when it filed an original answer and joined in the motion to dismiss. Appellees argue that we must presume that each

7

word was included in the TCPA for a purpose, and therefore the use of the term "service" in section 27.003(b) must mean that the Legislature intended that only formally served defendants may move to dismiss under the TCPA. *See Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 591 (Tex. 1957) ("Every word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give effect if reasonably possible.").

We disagree. With a few exceptions, a defendant may voluntarily appear in lieu of service. *See* TEX. R. CIV. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant."). Here, on its face, section 27.003(b) establishes a deadline by which a party should file a motion to dismiss under the TCPA. Appellees urge us to also construe section 27.003(b) as a limitation that prohibits voluntarily-appearing defendants from availing themselves of the protections of the TCPA. But interpreting the language in section 27.003(b) as merely prescribing a deadline for filing a motion to dismiss gives effect to all of the terms, and construing the statute in this manner does not lead to absurd results. *See Tex. Lottery Comm'n*, 325 S.W.3d at 635. Appellees cite no authority, and we have found none, to support the argument that the language in section 27.003(b)

8

was intended to limit application of the TCPA to defendants who are served with process. Indeed, appellees' contention that section 27.003(b) precludes a defendant who waives service from filing a motion to dismiss is incongruous with the legislative intent evident in the plain meaning of the statute. Accordingly, we conclude that the fact that G. Wesley Urquhart, P.C. appeared without having been served with process does not preclude it from filing a motion to dismiss under the TCPA.

Appellees also complain that the trial court granted Carolyn, G. Wesley, and Mary Elizabeth's motion for leave to file the joint motion to dismiss despite the fact that they had been served more than 60 days before they sought leave. They claim that this was error because it was premised upon the ability of G. Wesley Urquhart, P.C. to move for dismissal under the TCPA. But the statute expressly provides that the trial court may grant leave to file a motion after the 60-day deadline, and we have already concluded that G. Wesley Urquhart, P.C. was not precluded from filing a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). Accordingly, we conclude that the trial court did not err in granting the motion for leave. *See Tex. Lottery Comm'n*, 325 S.W.3d at 635 (our primary purpose is to give effect to the Legislature's intent by relying on the plain meaning of the text adopted by the Legislature unless it leads to absurd results).

9

**B. Are the appeals of Mary Elizabeth, G. Wesley, and G. Wesley Urquhart, P.C. moot?**

Appellees moved to dismiss the appeals of Mary Elizabeth, G. Wesley, and G. Wesley Urquhart, P.C., for lack of jurisdiction, arguing that their appeals are moot because they have been dismissed without prejudice from the underlying lawsuit while the appeal has been pending in this Court.

**1. Standard of Review and Applicable Law**

Whether we have subject-matter jurisdiction is a legal question that we review de novo. *Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied); *see Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App.—Dallas 2009, no pet.); *City of Shoreacres v. Tex. Comm'n of Envtl. Quality*, 166 S.W.3d 825, 830 (Tex. App.—Austin 2005, no pet.). The question of whether an appeal is moot implicates subject-matter jurisdiction. *See Meeker*, 317 S.W.3d at 759; *City of Shoreacres*, 166 S.W.3d at 830.

"The mootness doctrine prevents courts from rendering advisory opinions, which are outside the jurisdiction conferred by article II, section 1 of the Texas constitution." *Meeker*, 317 S.W.3d at 759 (citing *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000)). "A controversy must exist between the parties at every stage of the legal proceeding, including the appeal." *Id.* (citing

*Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002); *McClure v. JPMorgan Chase Bank*, 147 S.W.3d 648, 651 (Tex. App.—Fort Worth 2004, pet. denied)). "An issue may become moot when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect on a then-existing controversy." *Id.* When an appeal is moot, we must dismiss it. *See id.*

## 2. Analysis

After appellants filed this appeal, appellees nonsuited their claims against Mary Elizabeth, G. Wesley, and G. Wesley Urquhart, P.C., and the trial court signed orders granting the nonsuits. Appellees argue that, because these parties have been dismissed from the underlying proceeding, they have obtained the relief sought by their motion to dismiss, and their appeals are moot. The dismissed appellants, on the other hand, argue that the trial court should have granted their motion and awarded costs, fees, and sanctions, as they requested. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (if court dismisses case under TCPA, court "shall" award to moving party costs, attorney's fees, and other expenses as justice may require, and sanctions sufficient to deter the bringing of similar legal actions). Relying on *Villafani v. Trejo*, 251 S.W.3d 466 (Tex. 2008), appellants thus argue that their appeals are not moot.

11

We agree that Mary Elizabeth, G. Wesley, and G. Wesley Urquhart, P.C.'s appeals are not moot. In *Villafani*, Dr. Villafani moved to dismiss medical malpractice claims filed against him by Adela Trejo, arguing that Trejo's expert report did not meet the statutory requirements of the Medical Liability Insurance Improvement Act (MLIIA). *Id.* at 467. He also requested sanctions under the MLIIA. *Id.* The trial court denied the motion. *Id.* Later, Trejo filed a notice of nonsuit without prejudice as to Villafani, and the trial court dismissed her claims. *Id.* Villafani appealed the trial court's denial of his motion for sanctions and dismissal. *Id.* The court of appeals dismissed his appeal for lack of jurisdiction, holding that the nonsuit rendered Villafani's appeal moot. *Id.* at 467–68.

The Supreme Court reversed. Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. *Id.* at 469–70. "Whether a particular sanction is considered a claim for affirmative relief that survives a nonsuit for later enforcement or appeal depends on the purpose of the sanction." *Id.* at 470. The Supreme Court reasoned:

> Allowing defendants to seek sanctions under the MLIIA for attorney's fees and dismissal with prejudice deters claimants from filing meritless suits. Removing a defendant's ability to appeal a denial of a motion for sanctions after a nonsuit frustrates this purpose; a claimant could simply nonsuit a meritless claim and later re-file the claim with impunity. Therefore, because the purpose of the sanctions under the

12

MLIIA survived Trejo's nonsuit of her claims, we hold that Villafani's motion was for sanctions that survive a nonsuit and could be the subject of an appeal.

*Id.* at 470–71 (citations omitted).

Likewise, here, the TCPA provides for dismissal and sanctions "sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter," and provides that such sanctions "shall" be awarded when dismissal is warranted under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). The reasoning of *Villafani* applies with equal force in this case. Accordingly, we hold that the nonsuits in the trial court did not render moot the appeals of Mary Elizabeth, G. Wesley, and G. Wesley Urquhart, P.C. *See Villifani*, 251 S.W.3d at 470–71.

## C.  Does the TCPA apply to all of the claims in this case?

Appellees argue that the TCPA does not apply to this case because the underlying lawsuit was filed in April 2011, before the effective date of the TCPA.

### 1.  Standard of Review and Applicable Law

The effective date of the TCPA is June 17, 2011. *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 3, 2011 Tex. Gen. Laws 961, 964. The TCPA "applies only to a legal action filed on or after the effective date." *Id.*

13

The TCPA defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6). The Dallas Court of Appeals has noted that "[t]he definition of 'legal action' in the statute is broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis." *Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6)). Thus, for example, if a lawsuit was filed before June 17, 2011, but a new plaintiff joined the lawsuit after June 17, 2011, that plaintiff's claims are subject to dismissal under the TCPA. *See id.*; *see also San Jacinto Title Servs. of Corpus Christi, LLC v. Kingsley Props., LP*, No. 13-12-00352-CV, 2013 WL 1786632, at *5–6 (Tex. App.—Corpus Christi Apr. 25, 2013, pet. denied) (rejecting defendants' argument that entire suit against them was subject to TCPA because one cause of action was added after June 17, 2011).

## 2. Analysis

### a. Defendants added after effective date

Here, it is undisputed that appellees filed their original petition before June 17, 2011, but amended it repeatedly after June 17, 2011. It is also undisputed that

14

appellees joined Mary Elizabeth Urquhart and G. Wesley Urquhart, P.C. as defendants after June 17, 2011. In *Better Business Bureau of Metropolitan Dallas, Inc. v. Ward*, 401 S.W.3d 440 (Tex. App.—Dallas 2013, pet. denied), the Dallas Court of Appeals concluded that, because the term "legal action" in the TCPA is "broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis," the claims of a plaintiff who joined a lawsuit after the statute's effective date were subject to dismissal under the TCPA, even though the underlying lawsuit was filed before the statute's effective date. *Ward*, 401 S.W.3d at 443. We agree with *Ward's* rationale and, accordingly, we hold that the TCPA applies to all claims against Mary Elizabeth and G. Wesley Urquhart, P.C., because they were joined as defendants in the lawsuit after the statute's effective date. *See Ward*, 401 S.W.3d at 443 (party added after TCPA's effective date was subject to TCPA); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6).

### b. Claims amended after effective date

Appellees sued Carolyn and G. Wesley in April 2011, before the effective date of the TCPA. In the original petition, appellees asserted claims for monetary damages for an alleged civil conspiracy to violate the law through ex parte communications regarding the guardianship proceeding. The petition alleged that, as part of this conspiracy, Carolyn and her lawyers communicated ex parte with

15

Judge Steve M. King of Probate Court #1 in Tarrant County and Probate Court #1 Court Administrator Mark W. Sullivan in an attempt to get favorable rulings from Judge King. The appellees sought a temporary and permanent injunction to prevent further communications.

However, in their second amended petition, filed in August 2011, appellees abandoned the allegations and claims based on a conspiracy to communicate ex parte, and they also dropped Judge King and Sullivan as defendants. In the second amended petition, appellees asserted claims for fraud and slander of title. The factual basis for the claims was Carolyn and her lawyers' allegedly fraudulent attempt to (1) appear on behalf of Mary in court and (2) cloud title to Mary's home by filing the lis pendens. The seventh amended petition, filed in October 2012, was the live pleading at the time the motion to dismiss was filed, and its factual basis was similar to that of the second amended petition and included claims for actual and constructive fraud, statutory barratry under Texas Government Code section 82.0651, and fraudulent lien under Chapter 12 of the Property Code.[4]

The TCPA applies to a "legal action" filed on or after June 17, 2011, and a "legal action" includes "a lawsuit, *cause of action*, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or

---

[4] Appellees have amended their petition several times during the pendency of this appeal, but the causes of action remain the same.

16

equitable relief." *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 3, 2011 Tex. Gen. Laws 961, 964; TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (Emphasis supplied). As discussed above, in *Ward*, the Dallas Court of Appeals noted that the term "legal action" in the TCPA is "broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis." *Ward*, 401 S.W.3d at 443. Here, appellees' claims of fraud, barratry, and fraudulent lien, which are premised on Carolyn's asserted right to represent Mary and Carolyn's filing of the lis pendens, were asserted for the first time after the effective date of the TCPA. Accordingly, we hold that they are subject to the TCPA.

We note that the Corpus Christi Court of Appeals concluded in *San Jacinto Title Services of Corpus Christi, LLC v. Kingsley Properties, LP*, No. 13-12-00352-CV, 2013 WL 1786632 (Tex. App.—Corpus Christi Apr. 25, 2013, pet. denied) that a cause of action that was added after the effective date of the TCPA was not subject to dismissal under the TCPA, but we find *Kingsley* distinguishable. *Id.* at \*5–6. There, the original petition, filed before the effective date of the TCPA, alleged breach of fiduciary duty and tortious interference with prospective business relations. *Id.* at \* 1. An amended petition filed after the effective date added a cause of action for business disparagement. *Id.* at \*5. The defendants

17

argued that the addition of the business disparagement cause of action rendered all of the claims, including the claims that pre-dated the effective date of the statute, subject to the TCPA, but the court of appeals rejected that argument. *Id.* at \*5–6. Notably, there is no indication that the claim added after the statute's effective date in *Kingsley* was based on different factual allegations than those in the original petition. Here, the amended petition filed after the statute's effective date included substantively different factual allegations, and all of the causes of action alleged in the amended petition were new causes of action. Accordingly, we conclude that the TCPA applies to all of appellees' claims against all appellants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6); *Ward*, 401 S.W.3d at 443.

Having concluded that we have jurisdiction and that the TCPA applies to all claims against appellants, we deny appellees' motion to dismiss and turn to the merits of the appeal.

## Motion to Dismiss under the TCPA

In their first issue, appellants contend that the trial court erred in denying their motion to dismiss because they proved by a preponderance of the evidence that the appellees' claims "are based on, relate to, or are in response to [appellants'] exercise of the right of free speech, right to petition, and/or right of association," and because appellees failed to establish by clear and specific

18

evidence a prima facie case for each essential element of their claims.  Appellants also contend that they are entitled to damages, costs, and sanctions.

## A. Standard of Review and Applicable Law

To obtain dismissal under the TCPA, a defendant must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).  We review this determination de novo.  *See Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, No. 01-12-00990-CV, 2013 WL 3716693, at *3 (Tex. App.—Houston [1st Dist.] July 16, 2013, pet. denied); *see also Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

If the movant meets its burden to show that a claim is covered by the TCPA, to avoid dismissal of that claim, a plaintiff must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).  "The Legislature's use of the term 'prima facie case' implies a minimal factual burden: 'prima facie' evidence is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."  *Better Bus. Bureau of Metro. Hous.*, 2013 WL

19

3716693, at *5 (quotation omitted). But "[c]onclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Id.* (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223–24 (Tex. 2004)).

The TCPA requires that the proof offered address and support each "essential element" of every claim asserted with "clear and specific evidence." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). Accordingly, we examine the pleadings and the evidence in a light favorable to the nonmovant to determine whether it marshaled "clear and specific" evidence to support each element of its causes of action. *Better Bus. Bureau of Metro. Hous.*, 2013 WL 3716693, at *5.

"As the statute does not define 'clear and specific' evidence, these terms are given their ordinary meaning." *Id.* (citing *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). "'Clear' means 'free from obscurity or ambiguity,' 'easily understood,' 'free from doubt,' or 'sure.'" *Id.* (quoting MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 229 (11th ed. 2003)). "'Specific' means 'constituting or falling into a specifiable category,' 'free from ambiguity,' or 'accurate.'" *Id.* (quoting MERRIAM WEBSTER'S COLLEGIATE DICTIONARY at 1198). "Clear and specific evidence has also been described as evidence that is 'unaided by presumptions, inferences, or intendments.'" *Id.* (quoting *Rehak Creative Servs.*, 404 S.W.3d at 726)).

20

**C. Analysis**

Appellants argue that they proved that appellees' claims were exclusively based on, related to, and in response to appellants' exercise of their right of free speech, right to petition, and right to associate, because they demonstrated that all of appellees' claims are based on appellants' conduct in pending lawsuits. They assert that "all of Appellants' conduct in pending lawsuits is privileged, and protected as the exercise of the right to freely speak, freely associate, and to petition the government." Appellants' Br. 28. Accordingly, we consider whether appellants showed by a preponderance of the evidence that appellees' legal action is based on, relates to, or is in response their exercise of one of these rights, beginning with the right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).

**1. Exercise of the Right to Petition**

The TCPA provides that "a communication in or pertaining to a judicial proceeding" constitutes the exercise of the right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i). Appellants argue that the filing of a notice of lis pendens with the Harris County clerk, the filing of pleadings in the guardianship and the 61st District Court case, in which Carolyn purports to represent Mary's

21

interests, and the prosecution of those cases, are "by definition" a "communication in or pertaining to a judicial proceeding" that is within the scope of the TCPA.

We agree that appellees' claims in the underlying case are "based on, relate[] to, or [are] in response to" appellants' exercise of the right to petition as defined by the TCPA. *See id.* §§ 27.001(4)(A)(i), 27.005(b). As pleaded, appellees' actual and constructive fraud and barratry claims are "based on, relate[] to, or [are] in response to" Carolyn and her lawyers allegedly fraudulently claiming that they represent Mary in pleadings filed in various lawsuits. *See id.* § 27.005(b). Likewise, appellees' fraudulent lien claim is "based on, relates to, or is in response to" the lis pendens filed by Carolyn with the Harris County clerk that gave notice of her claims against Richard in the 61st District Court lawsuit, which seeks to cancel his transfer of Mary's home to a trust controlled by him. *See id.* All of these are "communication[s] in or pertaining to a judicial proceeding." *See id.* § 27.001(4)(A)(i). Appellees argue that that these actions cannot be constitutionally protected, but the cases they cite do not apply the TCPA, or do not involve communications of the type at issue here. Accordingly, we hold that appellants met their initial burden to prove that appellees' legal action related to their exercise of the right of petition. *See id.* § 27.005(c).

## 2. Appellees' Prima Facie case

Because appellants met their initial burden under the TCPA, the burden shifted to appellees to establish "by clear and specific evidence a prima facie case for each essential element" of their claims. *Id.* Accordingly, we examine the pleadings and the evidence in a light favorable to appellees to determine whether they marshaled "clear and specific" evidence to support each element of their causes of action. *See Better Bus. Bureau of Metro. Hous.*, 2013 WL 3716693, at *5. Appellees allege the following causes of action: actual and constructive fraud, statutory barratry under Texas Government Code section 82.0651, and fraudulent lien under Chapter 12 of the Property Code. Appellees' Br. 1. We address each of these in turn.

### a. Actual Fraud

"A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by

23

actively and justifiably relying on that representation." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011).

Here, neither Richard, as agent-in-fact for Mary, nor Easton adduced any evidence that they relied upon any of the alleged fraudulent representations by the appellants. To the contrary, they assert that they knew from the beginning that the representations of appellants were false. Accordingly, we conclude that appellees failed to adduce clear and specific evidence to establish a prima facie case of actual fraud. *See Better Bus. Bureau of Metro. Hous.*, 2013 WL 3716693, at *5.

### b. Constructive fraud

"Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship." *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied) (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)). "An informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Id.* (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). A familial relationship does not by itself establish a fiduciary relationship. *See Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980).

Here, appellees adduced no evidence to show that any fiduciary duty was breached. Accordingly, the evidence does not clearly and specifically establish all of the essential elements of a prima facie constructive fraud claim. *See Better Bus. Bureau of Metro. Hous.*, 2013 WL 3716693, at \*5.

### c. Barratry

Section 82.0651 of the Government Code provides for civil liability for prohibited barratry. "A client may bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, and to recover any amount that may be awarded under Subsection (b)." *See* TEX. GOV'T CODE ANN. § 82.0651(a) (West Supp. 2013). Subsection (b) provides that a prevailing client may recover, among other things all fees and expenses paid under the contract, actual damages caused by the prohibited conduct, a penalty in the amount of $10,000; and reasonable and necessary attorney's fees. *See id.* § 82.0651(b).

As a threshold matter, section 82.0651 permits only the client of the "attorneys or other persons" to bring suit. The evidence shows that neither Richard, individually, nor Easton was a client of any of Carolyn's lawyers. Thus,

the evidence does not establish a prima facie case under section 82.0651 on their behalf.

Appellees allege in their petition that Carolyn and her lawyers entered into a fraudulent contingent fee contract which provided that Mary's assets would be used to pay for Carolyn's representation of Mary as next friend. They appear to claim that this contract constitutes a contract with Mary herself, therefore bringing it under the purview of section 82.0651. However, none of the evidence that appellees submitted showed the existence of any contract, or that the contract was actually entered into between Mary and Carolyn's lawyers, as opposed to Carolyn and her lawyers. Accordingly, viewing all of the evidence in the light most favorable to the appellees, we conclude that appellees failed to adduce clear and specific evidence to establish a prima facie case under section 82.0651. *See Better Bus. Bureau of Metro. Hous.*, 2013 WL 3716693, at *5.

### d. Fraudulent lien

Section 12.002 of the Property Code forbids the filing of a fraudulent lien and allows a party injured by a fraudulent lien to recover damages. It provides:

(a) A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

26

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

(A)  physical injury;

(B)  financial injury; or

(C)  mental anguish or emotional distress.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a) (West Supp. 2013).  The party asserting that a claimed lien is a fraudulent lien has the burden to prove the requisite elements in the statute.  *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.).  A party who satisfies the section 12.002(a) requirements may recover $10,000 or the actual damages caused by the violation, whichever is greater, in addition to court costs, attorney's fees, and exemplary damages.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(b).  A lis pendens may form the basis of a fraudulent lien claim.  *See Brown v. Martin*, No. 13-10-00463-CV, 2011 WL 3366359, at *1 (Tex. App.—Corpus Christi Aug. 4, 2011, pet. denied) (mem. op.) (affirming judgment under section 12.002 for filing fraudulent lis pendens).

"Generally speaking, the purpose of lis pendens notice is twofold: (1) to protect the filing party's alleged rights to the property that is in dispute in the lawsuit and (2) to put those interested in the property on notice of the lawsuit." *David Powers Homes, Inc. v. M.L. Rendleman Co., Inc.*, 355 S.W.3d 327, 336 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Appellees claimed in their petition and in their response to the motion to dismiss that appellants knew that the lis pendens was fraudulent when it was filed, and that Carolyn admitted under oath that she knew that the lis pendens was fraudulent. But no evidence supports these assertions, and "[c]onclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Better Bus. Bureau of Metro. Hous.*, 2013 WL 3716693, at \*5 (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223–24). The evidence shows that the lis pendens provided notice of the pendency of the 61st District Court lawsuit, which requested a declaratory judgment that a 2007 deed conveying Mary's home to a trust created and controlled by Richard is invalid. There is no evidence showing that Carolyn, or her lawyers, believe that the lis pendens is fraudulent or that the deed properly transferred the house to Richard. Appellees failed to adduce any evidence that, when viewed in the light most favorable to them, showed that any appellant knew that the lis pendens was fraudulent. Accordingly, we conclude that appellees failed to adduce clear and

specific evidence to establish a prima facie case that appellants violated section 12.002 of the Property Code. *See id.*

Because appellees did not meet their burden to establish "by clear and specific evidence a prima facie case for each essential element" of their claims, we sustain appellants' first issue in part with respect to their argument regarding their right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). Because we resolve this appeal on the right to petition ground, we do not reach appellants' arguments regarding the exercise of their right of free speech and right of association. And because we have determined that appellants' motion to dismiss should have been granted, we do not reach appellants' second issue, urging an alternative ground for dismissal of Easton's claims.

**Conclusion**

We hold that appellants satisfied their burden under the TCPA to show that appellees' claims against them are based on, relate to, or are in response to, the exercise of their right to petition. *See id.* § 27.005(b). We further hold that appellees have failed to meet their burden to show, by clear and specific evidence, a prima facie case for each essential element of their claims. *See id.* § 27.005(c). We therefore reverse the trial court's denial of the motion to dismiss and remand the case to the trial court to award costs, fees, expenses, and sanctions as required

29

by the TCPA, and to order dismissal of the suit with prejudice. *See id.* § 27.009(a).

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, concurring without opinion.