# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00716-CV

---

**MFG Financial, Inc., Appellant**

**v.**

**Paul Jason Hamlin and Tara Natalie Bertalan Hamlin, Appellees**

---

**FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 18-0609-C26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

MFG Financial, Inc., appeals from the trial court's order denying MFG's motion to dismiss under the Texas Citizens Participation Act (TCPA), *see* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011,[1] which sought the dismissal of a lawsuit filed against MFG by appellees Paul Jason Hamlin and Tara Natalie Bertalan Hamlin.[2] We reverse the trial court's order and remand for further proceedings consistent with the TCPA.

---

[1] This case is subject to the pre-2019 version of the TCPA. *See* Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961-64 (amended by Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684). For ease, we will refer to the current versions of the statutes if no substantive changes were made, but when necessary, we will cite the former versions as "former Tex. Civ. Prac. & Rem. Code § __."

[2] The Hamlins also sued MFG's attorney Alton Lee Rigby, Jr., and his law firm, Smith Robertson, L.L.P. *See Smith Robertson, L.L.P. v Hamlin*, No. 03-18-00754-CV, 2019 WL 3023304 (Tex. App.—Austin July 11, 2019, pet. denied) (mem. op.). When necessary, we will refer to additional facts as explained in that opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 1999, MFG obtained a default judgment against Tara Hamlin in an Arizona small-claims court. On March 25, 2004, MFG filed an affidavit to renew the judgment, but in the notice of renewal, the Arizona justice of the peace erroneously wrote that the renewed expiration date was May 25, 2009, five years from the date of the original judgment instead of five years from the date MFG filed its renewal affidavit.[3] On May 7, 2009, MFG filed another renewal affidavit, which the Arizona justice of the peace purported to renew until May 7, 2014.

In December 2013, MFG, through its Texas attorney, Alton Lee Rigby, Jr., filed a Notice of Filing of Foreign Judgment in Williamson County; in January 2014, the Williamson County district clerk issued a "Notice of Filing of Foreign Judgment in the State of Texas"; and in May 2014, MFG recorded an abstract of the judgment in Williamson County's public records. Although the documents indicate that notices of the various filings were sent to Tara Hamlin at her address in Williamson County, the Hamlins asserted that they did not learn of the abstract of judgment until 2016, during title work to sell their home. The Hamlins filed a Homestead Affidavit Establishing Exemption to and Release from Judgment Lien in Williamson County's public records on June 20, 2016,[4] *see* Tex. Prop. Code § 41.001(a) (homestead is exempt from seizure for creditor's claims, except for encumbrance properly fixed on homestead), and sold

---

[3] Under Arizona law, a judgment creditor can renew a judgment by affidavit, and after an initial renewal affidavit is filed, the deadline for filing "[a]dditional and successive renewal affidavits" is calculated from "*the date of the filing of a prior renewal affidavit.*" Ariz. Rev. Stat. § 12-1612(E) (emphasis added).

[4] In their petition, the Hamlins state that they were "forced" to execute and file their affidavit by MFG's failure to release its judgment within twenty-one days of receiving a demand letter from the Hamlins. However, their affidavit was filed (and their real estate sale closed) about a month before they sent their demand letter to MFG.

their home on June 24, *see Smith Robertson, L.L.P. v Hamlin*, No. 03-18-00754-CV, 2019 WL 3023304, at *1 (Tex. App.—Austin July 11, 2019, pet. denied) (mem. op.).

On July 22, 2016, the Hamlins' attorney sent MFG a lengthy letter demanding that MFG execute a release of judgment within twenty-one days and pay the Hamlins a total of $125,500: $20,000 for damages under chapter 12 of the civil practice and remedies code, *see* Tex. Civ. Prac. & Rem. Code § 12.002(b) (allowing each injured person to recover greater of actual damages or $10,000); $60,000 in punitive or exemplary damages under chapter 12 and the Deceptive Trade Practices Act (DTPA), *see id.* § 12.002(b)(4) (permitting recovery of exemplary damages), Tex. Bus. & Com. Code § 17.50(b)(1) (permitting recovery under DTPA of up to three times economic and mental-anguish damages); $45,000 for attorney's fees; and $500 in costs. Although MFG did not file a release of judgment within twenty-one days of receiving the letter, it did file a release in the Williamson County district court in September 2016—the release was recorded in Williamson County's public records in March 2017.[5] *See Smith Robertson*, 2019 WL 3023304, at *1.

In May 2018, the Hamlins sued MFG—along with its attorney Rigby, and his law firm, Smith Robertson (collectively, the legal defendants)—asserting that the defendants had violated and were continuing to violate: chapter 12 of the civil practice and remedies code, *see* Tex. Civ. Prac. & Rem. Code §§ 12.001-.007 ("Liability Related to a Fraudulent Court Record or a Fraudulent Lien or Claim Filed Against Real or Personal Property"); section 17.50 of the DTPA, *see* Tex. Bus. & Com. Code § 17.50(a)(3); and several provisions of the penal code, *see* Tex. Penal Code §§ 32.46 ("Securing Execution of Document by Deception"), 32.48

---

[5] In their brief, the Hamlins mischaracterize MFG's release as being filed "[s]ince the Hamlins filed the petition giving rise to this proceeding." *See Smith Robertson*, 2019 WL 3023304, at *1.

("Simulating Legal Process"), 32.49 ("Refusal to Execute Release of Fraudulent Lien or Claim"), 37.09 ("Tampering With or Fabricating Physical Evidence"), 37.10 ("Tampering with Governmental Record"), 37.13 ("Record of a Fraudulent Court"). They sought a declaration that the Arizona judgment and associated Williamson County abstract of judgment were "null, void, and unenforceable, wholly improper and invalid, and fraudulent, wrongful, and illegal at all times," and asked the court to order the defendants to have the judgment and abstract of judgment vacated and removed from the Williamson County public records. They also sought attorney's fees of more than $70,000 and the greater of $10,000 or their actual damages "in the form of economic loss, mental anguish, pain, and suffering, attorney's fees, costs, and expenses" incurred in connection with their investigating the underlying facts, sending demand letters to MFG, and executing the homestead affidavit. *See* Tex. Civ. Prac. & Rem. Code § 12.002(b)(1) (person who violates section 12.002(a) or (a-1) is liable to each injured person for attorney's fees, court costs, and greater of $10,000 or actual damages); Tex. Bus. & Com. Code § 17.50(d) (consumer who prevails under section 17.50 shall recover court costs and attorney's fees). Finally, the Hamlins requested statutory penalties, punitive damages, and exemplary damages in the form of treble damages under chapter 12 or the DTPA. *See* Tex. Civ. Prac. & Rem. Code § 12.002(b)(4) (person who violates section 12.002(a) or (a-1) is liable to each injured person for exemplary damages); Tex. Bus. & Com. Code § 17.50(b)(1) (allowing for recovery of up to treble economic and mental anguish damages).

After the legal defendants were served in May 2018, they filed a motion to dismiss, which the trial court denied. In July 2019, this Court reversed the trial court, ruling that the TCPA applies to the Hamlins' claims and that the legal defendants proved the defense of attorney immunity. *See Smith Robertson*, 2019 WL 3023304, at *2-3. MFG was finally served

4

in May 2019, at which point it also sought dismissal under the TCPA. At a hearing on the motion in August 2019, the trial court stated, "The Court is of the opinion that the Citizens Participation Act is not applicable in this case and would, therefore, deny the motion to dismiss," signing an order to that effect a month later. MFG filed this appeal, arguing that it established that the TCPA applies to the Hamlins' claims, that the Hamlins did not meet their burden of showing a prima facie case of the elements of their claims, and that the Hamlins' requests for declaratory and injunctive relief should be dismissed.

## STANDARD OF REVIEW AND TCPA FRAMEWORK

We construe the TCPA liberally to effectuate its intent of safeguarding and encouraging citizens' constitutional rights to free speech, petition, and association while protecting the right to file a meritorious lawsuit. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam); *see* Tex. Civ. Prac. & Rem. Code §§ 27.002, .011(b). Under the former version of the TCPA, the party seeking dismissal had an initial burden of showing by a preponderance of the evidence that the nonmovant's "legal action" was based on, related to, or in response to a party's exercise of the right of free speech, right to petition, or right of association. Former Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b).[6] If the movant met that burden, the burden shifted to the nonmovant to establish by clear and specific evidence a prima facie case for each element of its claim. Tex. Civ. Prac. & Rem. Code § 27.005(c); *see Coleman*, 512 S.W.3d at 898; *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). Even if the claimant put forth a prima facie case, the trial court was still required to dismiss the

[6] The current version provides that a legal action must be dismissed if the movant "demonstrates" that the action "is based on or is in response to" the exercise of protected rights. Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b).

5

action if the movant "establishe[d] by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Former Tex. Civ. Prac. & Rem. Code § 27.005(d). The trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based," allowing limited relevant discovery on a showing of good cause but otherwise suspending discovery in the legal action until the motion has been decided. Tex. Civ. Prac. & Rem. Code §§ 27.003(c), .006.

We review de novo whether the movant established by a preponderance of the evidence that the challenged legal action is subject to the TCPA and whether the nonmovant presented clear and specific evidence establishing a prima facie case for each essential element of its challenged claims. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.). We have explained that prima facie evidence is "evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Id.* at 358. "Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Lipsky*, 460 S.W.3d at 592; *see also Serafine*, 466 S.W.3d at 358 ("Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case."). "[T]he term 'clear and specific evidence' refers to the quality of evidence required to establish a prima facie case, while the term 'prima facie case' refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden." *Serafine*, 466 S.W.3d at 358.

**DISCUSSION**

Initially, although the Hamlins "do not believe that the [TCPA] applies to this proceeding or any of the claims which the Hamlins have asserted against MFG in this proceeding," raising arguments similar to those they made in the legal defendants' appeal, this Court has already decided the issue to the contrary, holding that in seeking to domesticate the Arizona judgment in Texas, the legal defendants "made a communication in or pertaining to a judicial proceeding, thereby exercising the right to petition on behalf of" MFG. *Smith Robertson*, 2019 WL 3023304, at *2. The same logic applies to the Hamlins' claims against MFG, all of which arise out of its attempts to renew and domesticate the Arizona default judgment. We hold that the TCPA applies to the Hamlins' claims against MFG. *See id.*

We next consider whether the Hamlins carried their burden of presenting a prima facie case for each element of their claims.

### *The Hamlins' Claims Under the DTPA*

The elements of a DTPA action are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Code § 17.50(a)(3) (consumer may sue for economic or mental anguish damages arising out of defendant's unconscionable acts). Although on appeal MFG concentrates its argument on whether the Hamlins are consumers under the DTPA, *see* Tex. Bus. & Com. Code § 17.45(1) (defining "consumer" in relevant part as individual "who seeks or acquires by purchase or lease, any goods or services"), it challenged in its trial court filings whether the Hamlins could produce clear and specific evidence

7

amounting to a prima facie case for each of the essential elements of their claims, including damages. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Coleman*, 512 S.W.3d at 898.

In response to MFG's motion to dismiss, the Hamlins pointed to their petition; the Arizona judgment and the documents filed by the defendants in their attempt to domesticate the judgment; the Hamlins' demand letter and homestead affidavit; and Tara Hamlin's affidavit, in which she stated that she bought a gym membership in Arizona in 1997 or 1998, that the gym sold its rights to her membership contract to MFG, that MFG obtained a default judgment against her in 1999, and that she "did not learn or become aware of the suit which MFG Financial, Inc., had filed against her . . . until 2016, more than seventeen (17) years later, when Affiant and her husband, Paul Jason Hamlin, were attempting to sell their home in Cedar Park, Texas." The Hamlins produced no evidence related to any damages they might have suffered, although they asserted in their petition and TCPA response that: the legal defendants had attempted to domesticate the Arizona Judgment "for the sole purpose of annoying, embarrassing, harassing, intimidating, and/or oppressing the Hamlins"; the Hamlins were entitled to recover "actual damages, losses, and other amounts, including, but not limited to, damages in the form of economic loss, mental anguish, pain, and suffering, attorney's fees, costs, and expenses which the Hamlins have sustained or incurred in connection with" investigating and seeking release of the judgment; the abstract of judgment was still recorded in Williamson County's public records and thus still "continues to act . . . as a presumptive lien, mortgage, privilege, encumbrance, and/or charge on any real property," and "continues to injure, harm, damage, and adversely affect" the Hamlins and their reputation, credit rating, and standing in the community; and the abstract has "resulted in the creation of a presumptive lien" against the Hamlins' new homestead, purchased after the June 2016 sale of their previous homestead.

Merely stating that a claimant has suffered damages does not make it so, and beyond making those conclusory and unsupported allegations, the Hamlins' petition does not set out any specific information or details about alleged damages, nor does the record contain any evidence of damages.[7] *See Lipsky*, 460 S.W.3d at 590-91 ("general allegations that merely recite the elements of a cause of action" are insufficient to show prima facie case, and "plaintiff must provide enough detail to show the factual basis for its claim"). The Hamlins thus did not put forth a prima facie case as to damages, an essential element of their DTPA claim. *See Brown v. Enterprise Recovery Sys., Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, at *9-10 (Tex. App.—Fort Worth Aug. 22, 2013, pet. denied) (mem. op.).

### The Hamlins' Claims Under Chapter 12

Under section 12.002(a), a person "may not make, present, or use a document or other record" with: (1) knowledge that the document or record is "a fraudulent court record or a fraudulent lien or claim" against real or personal property; (2) an intent that the document or record "be given the same legal effect as a court record or document . . . evidencing a valid lien or claim" against real or personal property; and (3) an intent to cause another to suffer physical or financial injury or mental anguish or emotional distress. Tex. Civ. Prac. & Rem. Code § 12.002(a); *see McAllen Hosps., L.P. v. Gomez*, No. 13-12-00421-CV, 2013 WL 784688, at *6 (Tex. App.—Corpus Christi-Edinburg Feb. 28, 2013, no pet.) (mem. op.) (elements of fraudulent-lien claim are: "(1) the defendant made, presented, or used a document with knowledge that it was a fraudulent lien; (2) the defendant intended that the document be given

---

[7] Indeed, the petition does not indicate anything in the way of damages suffered by the Hamlins, who were able to close on their former homestead and buy a new home by providing their own homestead affidavit, and who obtained MFG's release of its claim against Tara in September 2016, more than a year before the lawsuit was filed.

legal effect; and (3) the defendant intended to cause plaintiff physical injury, financial injury, or mental anguish").

In an attempt to establish a prima facie case under section 12.002, the Hamlins simply recited the elements of the claim—asserting that the documents MFG presented in its domestication efforts are fraudulent, that MFG "knew or should have known" the documents are fraudulent, that MFG intended the documents to be given legal effect, and that MFG "intended at all times relevant and material thereto to cause the Hamlins financial harm, injury, or loss and mental anguish or emotional distress"—and pointed to the Arizona judgment, the first renewal notice, the documents filed in Williamson County, the Hamlins' demand letter, their homestead affidavit, and their petition.

In the context of section 12.002(a), our sister court applied the common definition of "fraudulent" as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."[8] *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.—Texarkana 2010, no pet.); *see Witt v. Chesapeake Expl., L.L.C.*, 276 F.R.D. 458, 470 (E.D. Tex. 2011) (applying *Walker* definition); *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 747 F. Supp. 2d 794, 812 (S.D. Tex. 2010) (same). Having surveyed case law involving fraud and fraudulent-lien claims, we agree with the *Walker* court's definition. The documents MFG filed in Texas do not show obvious defects on their face, and we agree with our sister court that an important distinction may be drawn between a document that "is factually

---

[8] "Fraud is an elusive and shadowy term which has been defined in some cases as any cunning or artifice used to cheat or deceive another," *Vela v. Marywood*, 17 S.W.3d 750, 760 (Tex. App.—Austin 2000, pet. denied) (cleaned up), and the supreme court has defined it as a false and material misrepresentation, either known to be false when made or asserted without knowledge of truth, that is intended to be acted upon, is relied upon, and results in injury, *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).

inaccurate in some respect and one that is attempting to perpetrate a fraud"—in other words, a lien may be invalid and unenforceable but not necessarily fraudulent. *Walker*, 306 S.W.3d at 849; *see also Bowman v. Wells Fargo Bank, N.A. for Park Place Sec., Inc.*, No. 1:13-CV-389, 2014 WL 12618686, at *5 n.7 (E.D. Tex. Aug. 20, 2014) ("invalid lien is not equivalent to a fraudulent lien"); *Witt*, 276 F.R.D. at 470 ("There is a clear distinction between a lien or contract that is invalid and unenforceable as filed and one that is fraudulent."). The Hamlins produced no evidence that MFG knew that the first renewal notice referenced an incorrect date, knew that its subsequent efforts to renew and then domesticate the judgment were invalid, or intended to conceal or misrepresent the validity of those documents.

The Hamlins assert that the Arizona judgment and the associated documents filed in Williamson County are "presumed to be fraudulent" under section 12.006, which requires a trial court to award a prevailing plaintiff its costs in bringing the action if the court "finds that the defendant, at the time the defendant caused the recorded document to be recorded or filed, knew or should have known that the recorded document is fraudulent, as described by Section 51.901(c), Government Code."[9] Tex. Civ. Prac. & Rem. Code § 12.006(a)(2). However, our sister court has noted that by choosing the language it did for chapter 12, the legislature did not intend for section 51.901(c), which "does not define the term 'fraudulent'" and instead "establishes a 'presumption' that a document or instrument is fraudulent under certain circumstances," to provide a definition for "fraudulent" that applies to all of chapter 12.

---

[9] Section 51.901(c) provides in relevant part that a document or instrument is "presumed to be fraudulent" if it: (1) is "a purported judgment or other document purporting to" prove a court order; or (2) "purports to create a lien or assert a claim against" real or personal property or an interest in real or personal property and is not provided for by constitution or laws, is not created by consent or agreement of the obligor, property owner, or agent of such person, and is not a court-imposed "equitable, constructive, or other lien." Tex. Gov't Code § 51.901(c).

11

*Centurion Plan. Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 507 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see Walker*, 306 S.W.3d at 850 ("As our sister court did in *Centurion*, we decline to extend application of the Government Code presumptions to Section 12.002."). But even if we were to apply section 51.091(c) to hold that the documents are fraudulent as a matter of law, that fact would not also amount to clear and specific evidence that MFG knew that the documents are fraudulent or that it intended to cause the Hamlins harm or distress. *See* Tex. Civ. Prac. & Rem. Code § 12.002(a); *Walker*, 306 S.W.3d at 850 (even if section 51.901(c) presumption applied, "it would only aid Roberts with respect to the first element of the fraudulent lien statute," and evidence of intent would still be required).

The TCPA allows a claimant to rely on their pleadings as "evidence" in response to a motion to dismiss, but "general allegations that merely recite the elements of a cause of action" do not meet the prima facie burden—"[i]nstead, a plaintiff must provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590-91. A prima facie case for a claim under section 12.002 thus requires more than the mere recitation that the defendant knew that a document was fraudulent. *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 12.002(a)(1). And although an intent to defraud can and often must be proven by circumstantial evidence, conclusory statements of intent are insufficient, and a claimant must point to specific facts illustrating that element. *Lipsky*, 460 S.W.3d at 588-89, 592-93; *see Enterprise Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 307 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (as to element of knowledge or intent, claimant asserted that there was "circumstantial evidence of this fact by virtue of" appellants' status as large company that regularly engaged in similar negotiations; court of appeals noted that claimant did not submit any evidence in support of assertion and that "the proposition is conclusory at best," concluding that conclusory statements

12

are not probative evidence and will not establish prima facie case); *James v. Calkins*, 446 S.W.3d 135, 150 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (plaintiffs alleged that defendants knew lis pendens was fraudulent when filed, but "[c]onclusory statements are not probative and accordingly will not suffice to establish a prima facie case").

Nor does the fact that MFG did not file its release within the twenty-one-day deadline the Hamlins provided in their July 2016 demand letter establish an intent to cause the Hamlins injury, *see Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.) (Preston Gate asserted that Bukaty's intent to cause financial injury by filing abstract of judgment was "self-evident" based on Bukaty's failure to remove lien on demand; abstract of judgment was filed and based on earlier default judgment obtained by Bukaty and arising from contract Preston Gate had executed with another party; and court of appeals stated that "the record is devoid of any evidence that appellees intended to cause Preston Gate financial injury when it filed the abstract of judgment"); *see also Brasch v. Lane*, No. 01-09-01093-CV, 2011 WL 2183876, at *5 (Tex. App.—Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.) (failure to remove lis pendens "does not amount to proof of intent to cause injury," and plaintiffs' "demand letter is not conclusive evidence of an intent to cause injury" because "a party may simply disbelieve claims of an opposing party"), particularly given that MFG filed a release in September 2016, about a month after the Hamlins' asserted deadline.

Because the Hamlins' only "evidence" of MFG's knowledge and intent to cause harm was their bare, conclusory assertions of such, the Hamlins did not carry their burden of establishing a prima facie case of at least two essential elements of their claim under chapter 12.

*The Hamlins' Claims Under the Penal Code*

In their petition, the Hamlins asserted that MFG had violated various provisions of the penal code. On appeal, however, they clarified that they "have not asserted or attempted to assert any claims against MFG under the provisions of the Texas Penal Code," explaining that they merely cited to several provisions to demonstrate or establish that MFG's actions or conduct "with respect to the Hamlins were and are deliberate, intentional, fraudulent, and illegal, as well as unfair, deceptive, and unconscionable, and were taken with the intent to cause financial injury or harm to the Hamlins and defraud the Hamlins." Because the Hamlins were not attempting to assert a civil claim under any penal code provisions, *see Homeward Residential, Inc. v. Burch*, No. 02-19-00413-CV, 2020 WL 370578, at *2 (Tex. App.—Fort Worth Jan. 23, 2020, pet. denied) (mem. op) ("the Penal Code does not create private rights of action"), we need not consider whether they established a prima facie case as to such claims.[10]

*The Hamlins' Claims for Declaratory and Injunctive Relief*

Finally, we consider the Hamlins' requests for declaratory and injunctive relief and whether those claims should have been dismissed. The Hamlins sought (1) a declaration that the Arizona judgment and the associated documents filed in Texas were "null, void, and unenforceable and wholly improper, invalid, fraudulent, wrongful, and illegal at all times which are relevant and material hereto"; and (2) an injunction requiring MFG to take all necessary steps

---

[10] In its reply brief, MFG notes that despite disavowing a private claim under the penal code, the Hamlins' brief also states that each of MFG's arguments, including its contention that the Hamlins cannot assert a private cause of action under the penal code, "is incorrect, is directly at odds with the applicable law, and should be summarily rejected by the Court." However, the Hamlins clearly state that they "are not attempting to assert any private causes of action against MFG under the provisions of the Texas Penal Code" and have only "pointed out MFG's violations of the relevant provisions of the Texas Penal Code to show the nature and character of MFG's conduct and actions with respect to the Hamlins."

to have those documents "annulled, vacated, and set aside in their entirety and cancelled, stricken, and expunged from" Williamson County's court and public records. On appeal, they state that their "claims for declaratory and injunctive relief have, for the most part, since been mooted" by MFG's release, which we note was filed well before the Hamlins filed suit. They do not explain, and we cannot discern, what portion of their requests for declaratory or injunctive relief might not be rendered moot by MFG's release.

Furthermore, as this Court has observed, "[w]hile sometimes termed a 'cause of action' colloquially, declaratory relief under the [Uniform Declaratory Judgments Act] is more precisely a type of remedy that may be obtained with respect to a cause of action or other substantive right." *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 297-98 (Tex. App.—Austin 2018, pet. denied). Similarly, "injunctive relief is a remedy, not a stand-alone cause of action." *Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet. denied). "[W]hen a legal action is dismissed pursuant to the TCPA, all remedies available under that legal theory disappear with the dismissal of the action itself." *Id.*; *see Cavin v. Abbott*, 613 S.W.3d 168, 171 (Tex. App.—Austin 2020, pet. filed) (quoting *Van Der Linden*, 535 S.W.3d at 203). Thus, because the Hamlins did not establish by clear and specific evidence a prima facie case for each essential element of their claims, their requests for declaratory and injunctive relief fail and must be dismissed. We sustain MFG's final issue on appeal.

## CONCLUSION

We have held that the Hamlins' claims were subject to the TCPA and that the Hamlins failed to carry their burden of proof in the face of MFG's motion to dismiss. We therefore reverse the trial court's order denying MFG's motion to dismiss and remand the case to

15

the trial court for further proceedings consistent with the TCPA. *See* former Tex. Civ. Prac. & Rem. Code § 27.009(a) (successful movant shall recover court costs, reasonable attorney's fees, and other expenses incurred in defending against legal action, as well as sanctions sufficient to deter party who brought legal action).

 

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Reversed and Remanded

Filed:   June 3, 2021