**Opinion issued April 7, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00773-CV

————————————

**ML DEV, LP; WINDOW DEV GP, LLP; IGLOO PARTNERS #11, LP; BEAMER ROAD  PARTNERS, LLP; DIXIE FARM PARTNERS, LLP; BLIMP BASE PROJECT, LP; HYAS CORPORATION LP; KATY I-10 PRAIRIE PARTNERS, LP; WALLER XYZ LP; RANCHO GENERAL INC.; LAT GP, LLC; LOUIS A. TSAKIRIS FAMILY LIMITED PARTNERSHIP, LTD.; A. TSAKIRIS FAMILY LIMITED PARTNERSHIP; MICHAEL MAGNESS; LOUIS A. TSAKIRIS, Appellants**

**V.**

**ROSS DRESS FOR LESS, INC., Appellee**

---

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case No. CV20-09-0018**

---

**O P I N I O N**[1]

This is a Texas Citizens Participation Act case decided under the 2019 version of the statute. A group of defendants were sued to force them to grant easement rights. They moved for dismissal on the argument that they were sued based on or in response to their exercise of the right of free speech and the right to petition. They point to statements they are alleged to have made as they blocked easement access. The trial court denied their TCPA motion, concluding that the dispute failed to invoke TCPA protections.

We agree. The defendants were sued based on and in response to their failure to act, not their communications. Whatever they communicated as they refused easement access might relate to the claims against them, but the lower threshold of "relates to" is no longer an adequate connection between the legal action and the communications made to invoke the TCPA's dismissal procedures. We therefore affirm.

**Background**

Ross Dress for Less, Inc. chose Waller County as the location for its new distribution center. In August 2018, it entered into a purchase sale agreement with ML Dev LP to purchase 250 acres along Interstate 10. The PSA closed in May

---

[1]  Our opinion issued on May 25, 2021. The appellants moved for panel rehearing. We deny the motion for rehearing. We withdraw our May 25 opinion and issue this in its stead. The disposition remains the same.

2019. A short while later, Ross tried to assert easement rights to adjacent land for construction of a road that would be necessary to develop its land and to create the distribution center. ML Dev refused easement access. During its efforts to resolve the easement dispute, Ross became better informed about ML Dev and the people and entities connected to it.

Ross discovered that ML Dev did not own the 250 acres when ML Dev executed the PSA in 2018. Instead, the person behind ML Dev, Michael Magness, had transferred his entities' ownership rights to the land to partnerships controlled by his good friends, Louis and Alex Tsakiris, who then transferred ownership to ML Dev just one day before the 2019 closing with Ross. According to the pleadings, ML Dev's post-closing position was that the Tsakiris partnerships controlled easement rights and Ross would have to pay extra to obtain the easements they thought were part of the original $33 million land purchase.

After Ross demanded easement access and ML Dev, the partnerships, and the Magness- and Tsakiris-related entities[2] refused access, Ross sued, asserting claims for tortious interference with contract and implied easement by necessity.

---

[2] The Magness-related entities were ML Dev, LP; Window Dev GP, LLC; Rancho General Inc.; Dixie Farm Partners, LLP; Blimp Base Project, LP; Katy I-10 Prairie Partners, LP; and Beamer Road Partners, LLP. The Tsakiris-related entities were Igloo Partners #11, LP; LAT-GP, LLC; Beamer Road Partners, LLP; Dixie Farm Partners, LLP; Blimp Base Project, LP; HYAS Corporation; Katy-I-10 Prairie Partners, LP; Waller XYZ LP; and Louis A. Tsakiris Family Partnerships, Ltd.

Ross also sought a declaratory judgment that ML Dev was contractually required to provide easements or right of way for road improvements and injunctive relief to require easement access.[3] The Magness- and Tsakiris-related entities (collectively, the Developer entities), immediately moved for TCPA dismissal of the easement-rights suit. Ross amended its petition to add a claim for easement by estoppel.

The trial court held a hearing and denied the Developer entities' TCPA motion, concluding that they did not meet their burden to identify any TCPA protected communications. The trial court set a date to hear Ross's claim for attorney's fees based on the theory that the Developer entities filed the TCPA dismissal motion as a delay tactic. Before that hearing date, the Developer entities appealed the denial of their TCPA motion. The litigation has been stayed in the trial court awaiting disposition of this appeal.

## The TCPA as Amended

The TCPA was enacted in 2011. *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 3, 2011 Tex. Gen. Laws 961, 964. Its stated purpose was "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent

---

[3] In the same suit, Ross sued Waller County and the Waller County Road Improvement District No. 1 for breach of contract, arguing that the Road Improvement District was contractually required to construct the road that the easement was being requested for. Those defendants did not move for TCPA dismissal and are not part of this appeal.

4

permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. Litigants who sued with the intent to chill the First Amendment rights of their detractors faced summary dismissal of their legal actions and accompanying fees and costs. *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (citing TEX. CIV. PRAC. & REM. CODE § 27.002). The dismissal movants had to establish that the "legal action" they sought to dismiss was based on, related to, or in response to their exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.003(a). If such a connection were established, the burden shifted to the nonmovants to make a prima facie showing of the elements of their claims. *Id.* § 27.005(c).

The prospect of summary dismissal with fees proved to be an attractive option to all types of defendants facing all kinds of legal claims. *See James v. Calkins*, 446 S.W.3d 135, 139 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding that TCPA applied to suit between family members over lis pendens clouding title to property within their mother's estate); *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *12 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.) (Field, J., concurring) ("It seems that any skilled litigator could figure out a way to file a motion to dismiss under the TCPA in nearly every

5

case, in the hope that the [claim] will not only be dismissed, but that the movant will also be awarded attorney's fees.").

A TCPA docket quickly developed with defendants (and, increasingly, plaintiffs) making novel arguments about how the TCPA might support the dismissal of unwanted claims and procedural actions. *See Hotchkin v. Bucy*, No. 02-13-00173-CV, 2014 WL 7204496, at *1 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.) (plaintiff sought TCPA dismissal of defendant's TCPA dismissal motion, arguing that defendant's motion impacted plaintiff's right to petition); *see also Serafine v. Blunt*, 466 S.W.3d 352, 394–95 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (lamenting many statutory-construction issues with broad TCPA statute and onslaught of TCPA appeals crowding appellate court's docket).

The TCPA was amended in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. One of the more significant changes to the statute was a narrowing of the categories of connections a claim could have to the exercise of a protected right to enable the movant to seek dismissal. Originally, the movant had to establish that the claim against it is "based on, relates to, or is in response to" the movant's exercise of a protected right. TEX. CIV. PRAC. & REM. CODE § 27.005(b) (old version). "Relates to" was the most expansive of the three categories of connections and brought tangential communications within the

6

TCPA's reach. *See Cavin v. Abbott*, 545 S.W.3d 47, 69 n.85 (Tex. App.—Austin 2017, no pet.) (interpreting "relates to" as merely denoting "some sort of connection, reference, or relationship"); *see also Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied) (interpreting "relates to" as a broad qualifier).

The 2019 amendment deleted "relates to" from the list, thereby requiring future movants to establish that the legal actions they seek to dismiss are "based on" or "in response to" their exercise of a protected right. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b) (new version); *see* Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 Tex. Tech L. Rev. 163, 169 (2020) (noting that deletion of "relates to" increases burden on movants seeking dismissal).

Thus, under the current version, for the Developer entities to obtain dismissal of Ross's claims against them, they had to establish that Ross's "legal action is based on or is in response to [their] exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE § 27.003(a) (new version).

Relevant to that inquiry, the "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). Within that definition, a "communication" means the "making or

submitting of a statement or document in any form," and a "matter of public concern" means "a statement or activity regarding [a public person]; a matter of political, social, or other interest to the community; or a subject of concern to the public." *Id.* § 27.001(1), (7).

The "exercise of the right to petition" includes, among other things, "a communication in or pertaining to: . . . a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity," "a proceeding of the governing body of any political subdivision of this state," or "a public meeting dealing with a public purpose." *Id.* § 27.001(4)(A)(v), (vii), (ix).

The Developer entities moved for dismissal under the exercise of the right of free speech, to petition, and of association, but they have limited their arguments on appeal to the right of free speech and the right to petition.

### Standard of Review

We review de novo the denial of a TCPA motion to dismiss. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) (citing *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). We view the pleadings and evidence in a light most favorable to the plaintiff non-movant. *Id.*

Whether the TCPA applies to Ross's claims is an issue of statutory construction and is reviewed de novo as well. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). In conducting our analysis of the statute, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 1 (Tex. 2018). We construe the TCPA's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680. "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

We consider both the specific statutory language being challenged and the statute as a whole. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding); *see Youngkin*, 546 S.W.3d at 680 ("[L]egislative intent derives from an act as a whole rather than from isolated portions of it."). "We endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *Gaskamp*, 596 S.W.3d at 470 (citing *In re Office of Att'y Gen.*, 422 S.W.3d at 629).

**The Developer Entities Did Not Establish that Ross's
Legal Actions are Based on or in Response to Communication
Made in the Exercise of a Protected Right**

Ross has demanded easement access to land adjacent to the land it bought from ML Dev for $33 million. It sued for tortious interference with contract,

implied easement by necessity, and easement by estoppel, and sought a declaratory judgment that ML Dev was contractually required to provide easements or right of way for road improvements, as well as injunctive relief to require easement access. Ross points to an agreement between various Magness-related entities and the County that pre-dates its land purchase and references easement access. Ross contends that its purchase price included these easement rights. ML Dev has denied easement access.

To help link Ross's claims to its own communication about a matter of public concern, the Developer entities point to statements they allegedly made while denying access. These include (1) an alleged statement by Magness that Ross would have to obtain easement rights from the Tsakiris-related partnerships, not ML Dev, (2) an alleged misstatement by ML Dev that it could not grant the easement access, and (3) an alleged statement by the Tsakiris partnerships that easement access would not be provided for free.

Under a de novo review, we conclude that the Developer entities cannot draw an adequate connection between their statements and Ross's legal claims to invoke the TCPA. Their alleged statements may have accompanied the denial of easement access. And they might clarify what the Developer entities hoped Ross would do in the future to finally obtain the necessary access. But the communications, themselves, do not provide the basis for the legal claims or the

10

impetus for suit. Ross does not allege that it was injured by the statements. It does not seek to prevent similar statements in any private or public setting. It seeks to force the Developer entities to take a specific action. The core of Ross's suit is a demand for easement access—to allow entry on and use of land.

Statements by the Developer entities that acknowledge their refusal to grant access are connected to Ross's suit, but they only rise to the level of "relates to"— what had been the least exacting level of connection permitted under the previous version of the TCPA. *See Cavin*, 545 S.W.3d at 69 n.85 (relying on Webster's Third New International Dictionary 1916 (2002), and American Heritage Dictionary of the English Language 1482 (5th ed. 2011), to define "relates to" as just "some sort of connection, reference, or relationship").

The Legislature deleted the "relates to" option in 2019. Now, the Developer entities—and all TCPA movants—must establish that the legal claims are "based on" or "in response to" their communications. The Developer entities have not met that higher burden.

The Developer entities' briefs[4] focus on whether the construction of a road using public funds is a matter of public concern. But that inquiry misses the focus of our review, which is whether the Developer entities have shown an adequate

---

[4] The Developer entities filed a motion for leave to file an additional brief, which we grant.

connection between the legal claims and the communications that they allege were about a matter of public concern.[5] We conclude they have not.

Likewise, the Developer entities have failed to establish that Ross's claims are based on or in response to communications they made in the exercise of a right to petition. The Developer entities point first to the Tsakiris partnerships' refusal to approve a plat submitted to the Brookshire-Katy Drainage District that included the easement Ross was seeking. They also point to a meeting of the Waller County Road Improvement District at which Magness allegedly stated that the District would have to deal with the Tsakiris partnerships on the easement issue.

Under a de novo review, we cannot agree that Ross's suit for easement rights and damages from being denied access was based on or in response to these communications. Instead, they were based on and in response to the Developer entities' actions: its denial of easement access. Noting that the blocked access came with a plat refusal and was referenced at a meeting does not draw an adequate connection to invoke the TCPA under the amended language. The deleted phrase "relates to" might encompass the chatter around the denial of easement access, but

---

[5] The parties did not focus their briefing on how the deletion of "relates to" might affect the outcome of this appeal, but the determination of whether a party's pleadings and evidence establish that the legal claims are based on or in response to the exercise of a protected right is a question of law reviewed de novo and is not "cabined" by the precise legal arguments or record references made in the trial court. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Clinical Pathology Labs., Inc. v. Polo*, 632 S.W.3d 35, 44 n.6 (Tex. App.— El Paso 2020, pet. denied).

12

"based on" and "in response to" are not so sweeping. *See* Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 TEX. TECH L. REV. 163, 169 (2020) (noting that deletion of "relates to" increased burden on movants seeking dismissal); Amy Bresnen, Lisa Kaufman & Steve Bresnen, *Targeting the Texas Citizen Participation Act: The 2019 Texas Legislature's Amendments to a Most Consequential Law*, 52 ST. MARY'S L.J. 101, 140 (2020) (available at: https://commons.stmarytx.edu/thestmaryslawjournal/vol52/iss1/1) (discussing that "relates to" is the "most inclusive" of the three connection terms and that its deletion "narrowed" the statute).

Under applicable statutory-construction principles, we must presume that the Legislature intended its deletion of the phrase "relates to" to have an effect. *Lippincott*, 462 S.W.3d at 509. That deletion removed the broadest category of connection, thereby requiring future TCPA movants to establish a closer nexus between the claims against them and the communications they point to as their exercise of protected rights. This is one of the first examples of how the tightening of the statutory language now restricts what previously may have invoked TCPA protections.

## Conclusion

We affirm.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Guerra.